# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| HEIDI REEF, | |
| Plaintiff, | |
| v. | CAUSE NO.: 4:19-CV-21-TLS |
| ANDREW SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Heidi Reef seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge (ALJ) made several errors in formulating her residual functional capacity based on misstatements of the evidence. For the reasons set forth below, the Court finds that the ALJ has not created a logical bridge between the evidence of record and the conclusion that Plaintiff can perform the standing and walking requirements of light work. Therefore, reversal and remand for further proceedings is warranted.

## PROCEDURAL BACKGROUND

On June 8, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning April 13, 2015. AR 62, 174, ECF No. 5. The claim was denied initially and on reconsideration. *Id*. 72, 89. Plaintiff requested a hearing, which was held before the ALJ on November 28, 2017. *Id*. 110, 112, 131. On March 13, 2018, the ALJ issued a written decision and found Plaintiff not disabled. *Id.* at 17–30. On March 8, 2019, Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. Plaintiff filed

an opening brief [ECF No. 10], the Commissioner filed a response brief [ECF No. 13], and Plaintiff filed a reply brief [ECF No. 14].

**THE ALJ'S DECISION**

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 13, 2015, the alleged onset date. AR 19.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that Plaintiff has the severe impairments of idiopathic gastroparesis, degenerative disc disease at the lumbar spine with mild facet hypertrophy and mild spinal stenosis, bilateral greater trochanteric bursitis, tarsal tunnel syndrome to both lower extremities, left facial numbness, and bilateral degenerative joint disease. AR 19.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listings 1.02, 1.04, 5.06, and 5.08. AR 21–22.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, the claimant is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She is able to occasionally climb ladders, ropes or scaffolds and frequently balance, stoop, kneel, crouch and crawl. Last, the claimant is limited to occasional exposure to extreme heat, wetness and hazards.

AR 22.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that Plaintiff is capable of performing her past relevant work as a medical assistant (DOT #079.362-010), which is light skilled under the DOT and medium as performed. AR 29. The ALJ found that this work does not require the performance of work-

3

related activities precluded by the Plaintiff's RFC. *Id*. Because Plaintiff could perform her past relevant work, the ALJ found that Plaintiff was not disabled at step four under 20 C.F.R. § 404.1520(f). *Id.* Thus, the ALJ did not need to move to step five to consider whether Plaintiff could make an adjustment to other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–8, 9–11. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the

Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

**ANALYSIS**

Plaintiff seeks reversal of the ALJ's decision, arguing that the ALJ's RFC determination is based on several misstatements of the record. Specifically, Plaintiff argues that the ALJ erred in finding that Plaintiff can sustain the standing and walking requirements of light work, in analyzing Plaintiff's daily activities and their relationship to her ability to sustain work-related

5

activities, in describing Plaintiff's activity of sewing dog collars, and by not accommodating Plaintiff's gastroparesis in the RFC.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3.

The relevant evidence includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

In this case, Plaintiff has shown that substantial evidence does not support the ALJ's conclusion that Plaintiff can sustain the standing and walking requirements of light work, which are standing and/or walking six hours in an eight-hour workday. The Court finds that remand is required for the ALJ to explain how the evidence supports a finding that Plaintiff is able to stand

or walk for six hours in an eight-hour workday in light of her ongoing foot, ankle, leg, hip, and back pain.

Plaintiff notes that the record documents a long history of treatment with injections and surgery for lumbar spine degenerative disc disease, bilateral greater trochanteric bursitis, and tarsal tunnel syndrome of both lower extremities, all of which the ALJ found to be severe impairments. AR 19. The Plaintiff also recognizes that the ALJ extensively summarized portions of the medical record related to these impairments. Pl.'s Br. 21 (citing AR 23–27). Indeed, the ALJ thoroughly discussed the evidence of record. *See* AR 23–28. However, Plaintiff contends that the ALJ erred by concluding that, even though she had surgery and injections, "her pain is greatly reduced and at times completely relieved." AR 25. The Court agrees that this conclusion, on which the ALJ relied to find that Plaintiff can perform the standing and walking requirements of light work, is not supported by substantial evidence.

After hip surgery in October 2015, Plaintiff continued to have pain in her hips and increased pain with sitting, standing, and stair climbing. AR 519–20, 873–74. In December 2015, a physical therapist documented right hip tightness and gait difficulty. *Id.* 519–20. In February 2016, Plaintiff reported to treating physician Dr. Fisher that she had had multiple steroid hip injections on the right and trials of oral medications "to no avail;" that, although her hip surgery initially provided relief, a month later she developed acute severe pain, swelling, and numbness in the right anterior thigh; and that physical therapy subsequently provided some temporary relief. *Id.* 477. Dr. Fisher noted that Plaintiff reported daily pain that localizes to her right upper lateral back area and that she continues with swelling, pain, or numbness in her right anterior thigh, which is worse at the end of the day. *Id.* Dr. Fisher opined that Plaintiff's pain could be

due to L4-L5 nerve root impingement. *Id.* 477–78; *see also id.* 517. In February 2016, Plaintiff received a L5 bilateral nerve root block. *Id.* 642.

On referral by Dr. Fisher, in April 2016, Dr. Freedman of the Mayo Clinic examined Plaintiff for her complaints of "chronic back pain and shooting symptoms into the bilateral lower extremities, specifically into the right lateral hip area which has been a rather challenging problem to treat." *Id.* 608. Dr. Freedman recognized the pain Plaintiff experienced following the October 2015 hip surgery and that, despite treatment efforts, Plaintiff "has had minimal lasting clinical benefit" from the surgery. *Id*. Dr. Freedman opined that Plaintiff could have radiculitis that affected the L5 nerve root and noted she had diminished sensation in the L5 area over the right lateral femoral cutaneous nerve. *Id.* 608–10. Dr. Freedman further explained that surgical intervention was not recommended and that symptom control through selective nerve root blocks was Plaintiff's best option. *Id.* 609. Dr. Freedman wrote that he told Plaintiff, "[S]ometimes people have painful conditions of the musculoskeletal system for which surgery and other treatments are just not beneficial, and we are left in that scenario with trying to minimize the symptoms as best we can." *Id*.

In a July 2016 treatment note, Plaintiff continued to seek treatment options. *Id*. 692. She reported that the right L5 selective nerve root block from May 2016 did not give her significant improvement like her first block, reporting 80% pain relief. AR 692. She reported having difficulty with incline and that the pain is "significantly limiting." *Id*. She reported 50% pain relief with topicals. *Id*. She reported that leaning forward, bending, and sitting exacerbate her pain and that she has been unable to find anything that significantly alleviates her pain. *Id*. Plaintiff asked about the possibility of surgery and was offered the possibility of spinal cord

stimulation. *Id*. The treatment note indicates that efforts continued to determine the source of her pain. *Id.*

The ALJ's statement that treatment had greatly reduced or eliminated Plaintiff's pain is not supported by the record, and the ALJ has failed to build a logical bridge from the evidence to the RFC for light work. As argued by the Commissioner, the ALJ noted multiple instances in the record where Plaintiff had normal gait and full strength upon examination, AR 25–27 (citing AR 311, 614, 684); however, there is no discussion of how those examination findings support an ability to stand or walk for six hours in an eight-hour workday. The case is remanded for the ALJ to explain how Plaintiff is able to stand or walk for six out of eight hours in light of the ongoing pain she experiences in her feet, ankles, legs, hips, and back and for which she does not appear to be able to obtain meaningful relief.

This error regarding Plaintiff's ongoing pain and her ability to perform the standing and walking requirements of light work is compounded by the ALJ's treatment of the evidence related to Plaintiff's daily activities and her work sewing dog collars. As for her daily activities, Plaintiff argues that the ALJ erred when he wrote:

> She admits that she continues to garden, socialize, volunteer, work part-time, and swim daily. The claimant reported that she would swim all day if she could and would swim for a few hours at a time. This coupled, with her volunteering, gardening and working after her onset date and retiring even with ongoing medical treatment is evidence that she is able to perform light exertional work with . . . postural and environmental limitations.

AR 28–29. Plaintiff is correct that the record does not support the ALJ's statements regarding the nature, frequency, and quality of Plaintiff's daily activities; as a result, the ALJ has failed to show how these daily activities support an ability to perform light work.

First, the ALJ commented at least twice that Plaintiff's volunteering and socializing are evidence of her ability to perform light work. AR 25, 28. However, the ALJ offers no record

9

citation in support of either activity. The Commissioner acknowledges that there does not appear to be a reference in the record to Plaintiff performing volunteer work. Def.'s Br. 8, n. 4, ECF No. 13. As for socializing, Plaintiff reported in her adult function report that she goes out to eat with her husband "close by," visits with neighbors, or goes out with friends. AR 211, 215. Plaintiff's husband reported that Plaintiff no longer participates in activities that require a lot of walking and that she is not as socially active as she used to be. *Id.* 207. Without any context for the nature and extent of the socializing, it is unclear how Plaintiff's reported activities support an ability to stand or walk for six hours in an eight-hour workday when contrasted with the long and extensive record of Plaintiff's foot, ankle, leg, hip, and back pain. *See Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) (finding that the ALJ wrongly evaluated the significance of the claimant's reported activities, which were consistent with the claimant's testimony as to his limitations).

Next, Plaintiff argues that the ALJ erred by stating that, "[d]espite [her] pain, she enjoyed gardening and gardened 2 and a 1/2 acres." AR 27 (citing AR 611). Plaintiff is correct that the ALJ misstates the underlying source, which is Dr. Freedman's notation, in the context of summarizing Plaintiff's ongoing pain after the October 2015 surgery: "She notes concern that she has always been quite active, gardening two and a half acres, and she is having more difficulties with this and other daily activities." *Id.* 611. The report does not state that Plaintiff is currently gardening two and a half acres at the same intensity that she did prior to her disability. Although Plaintiff testified that she loves to garden, she testified that she wears knee pads and crawls in order to do so. *Id.* 56. In fact, she wrote in her questionnaire that she engages in "very limited flower gardening." *Id.* 215. This limited activity of gardening as set forth in the record does not support a finding of the ability to stand or walk six hours in an eight-hour workday.

As for swimming, the ALJ notes in several places that Plaintiff swims, *id.* 24, 25, 28, and the ALJ relies on this fact to find that Plaintiff can perform light work, *id.* 25, 28. Indeed, Plaintiff reported during the August 2015 mental consultative examination that she likes to swim and that she "actually swims nearly the entire day when she the available time." *Id.* 318. A July 27, 2015 progress note by Dr. Lockwood indicates the Plaintiff swims three hours a day. *Id.* 302. However, there is no record of the type of swimming she engaged in. And the Court notes that Dr. Lockwood's July 2015 notation was made in the context of listing methods of relieving pain, including applying a gel, stretching exercises, swimming three hours a day, diclofenac pills, and injections. AR 302. The July 2015 record also indicates that "[s]he cannot walk very far, cannot walk on anything but a level surface. . . . Has to be careful with the garden." *Id*. Moreover, the record demonstrates that Plaintiff's foot, leg, knee, and hip pain are all exacerbated by weight-bearing activities such as walking and climbing stairs; swimming is not such an activity. It is unclear how an ability to swim translates into an ability to stand or walk six hours in an eight-hour workday. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (noting that the ability to engage in limited exercise to help pain does not contradict allegations of disabling pain nor does it necessarily demonstrate an ability to work eight hours a day for a five-day workweek).

As to Plaintiff's work sewing dog collars after her onset date, the ALJ wrote that Plaintiff "testified that she retired in March 2015 and now makes dog collars where she works 3–4 hours per day at home, which entails her sewing and putting the collars together." AR 23. However, Plaintiff testified that she can sew generally three to four hours a day but "never at one period of time." *Id.* 46. She testified that she had arranged her sewing the room so that she can change positions frequently because, she testified, "[W]ith the hip pain, I can't sit. I can't stand. I can't

do anything for a very long period of time, in any one position, if you understand what I mean." *Id.* 45. As for making dog collars, she clarified that she only makes them for two groomers with whom she had a prior relationship and that she makes the collars for about two hours a month prior to major holidays. *Id.* 48–49. In her adult function report, Plaintiff wrote that she cannot sew for more than two hours and that she cannot stand to cut things out. *Id.* 215. In weighing Plaintiff's subjective complaints, the ALJ commented that Plaintiff "continues to work . . . [and] run a business from her home." AR 29. Neither characterization of Plaintiff's dog-collar making activity as "continuing to work" or as "running a business" is supported by Plaintiff's testimony. On remand, the ALJ is directed to properly consider the nature of Plaintiff's sewing activities in weighing Plaintiff's subjective complaints and in assessing Plaintiff's ability to sustain work at the light exertional level.

Because the ALJ misstated portions of the evidence related to Plaintiff's daily activities, substantial evidence does not support the ALJ's conclusion that Plaintiff's daily activities are consistent with light work. *See Hughes v. Astrue*, 705 F.3d 276, 278–79 (7th Cir. 2013) (finding the plaintiff's activities of daily living not inconsistent with a finding of disability).

As another basis for remand, Plaintiff argues in her brief that the RFC does not accommodate limitations due to her gastroparesis because the RFC does not include a restriction for extra time in the restroom. A review of the record and the ALJ's decision shows that the ALJ accurately considered Plaintiff's history of gastroparesis and the record evidence of treatment for the condition. The most relevant treatment record regarding a need to use the restroom frequently is the April 2017 record in which Plaintiff reported that she had as many as fifteen bowel movements a day. AR 935. As noted by the ALJ, the doctor reduced the dosage of the medication that was causing the frequent bowel movements. *Id.* 28 (citing AR 935). In the

subsequent October 2017 treatment record, Plaintiff reported that her bowel movements were "unpredictable" and that she had abdominal pain, abdominal discomfort, bloating, weight gain, and inability to eat. *Id.* 951–52. The ALJ noted that the doctor's suspicion that Plaintiff's abdominal pain was due to her not following the prescribed diet. *Id*. 28 (citing AR 950–52). Nevertheless, because the case is being remanded on other grounds, the ALJ is directed to specifically address whether the record supports a need to use the restroom frequently such that an additional limitation should be incorporated in the RFC.

Finally, Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for further proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in Plaintiff's Brief [ECF No. 10] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES Plaintiff's request to award benefits.

SO ORDERED on April 3, 2020.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT